UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


In re: ANTHONY A. PIZZARO
Case No. 16-14095 ELF


AMENDED CHAPTER 11 PLAN OF REORGANIZATION
PROPOSED BY
ANTHONY A. PIZZARO
THE DEBTOR & DEBTOR-IN-POSSESSION HEREIN,
DATED 02/26/2018


Counsel for Debtor
Paul Howard Young, Esquire
YOUNG MARR AND ASSOC.
3554 Hulmeville Rd
Suite 102
Bensalem, PA 19020
Phone 215-639-5297

TABLE OF CONTENTS TO PLAN OF REORGANIZATION AND
INFORMATIONAL - DISCLOSURE STATEMENT

PLAN OF REORGANIZATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    Page 1

ARTICLE I: Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    Page 1

ARTICLE II: Informational Statement . . . . . . . . . . . . . . . . . . . . . . .    Page 3

WHY THE DEBTOR FILED FOR RELIEF UNDER THE BANKRUPTCY CODE  . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    Page 3

IMPORTANT EVENTS OF THE CHAPTER 11 CASE . . . . . . . . .    Page 4

THE DEBTOR'S ASSETS & INCOME . . . . . . . . . . . . . . . . . . . . . .    Page 4

ARTICLE III: Classification & Treatment of Claims & Interests . . .    Page 5

    3.1 Class 1 Claims [Priority Claims] . . . . . . . . . . . . . . . . .    Page 5

    3.2A Class 2A Claim [Claim secured by Mortgage against Realty] . .    Page 6

    3.2 B Class 2B Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    Page7

    3.2 C Class 2 C Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    Page 7

    3.2 D Class 2 D Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    Page 8

    3.2 E Class 2 E Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    Page 8

    3.2 F Class 2 F Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    Page 9

    3.2 G Class 2 G Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    Page 9

    3.2 H Class 2 H Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    Page 9

    3.3 Class 3 Claim(s) [Unsecured Claims entitled to Priority] . . . . . . .    Page 10

    3.4 Class 4 Claims [Unsecured Claims not entitled to Priority] . . . . . .    Page 10

    3.5 Class 5 Claim(s) [Unsecured Claims not entitled to Priority not included within
Class 4] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    Page 11

ARTICLE IV ALLOWANCE & DISALLOWANCE OF CLAIMS . . . . .    Page 11

4.1 Disputed Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 11

4.2 Delay of Distribution on a Disputed Claim . . . . . . . . . . . . . . . Page 11

4.3 Settlement of Disputed Claims . . . . . . . . . . . . . . . . . . . . . . . . . Page 11

4.4 Claims that are Disputed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 11

ARTICLE V PROVISIONS FOR EXECUTORY CONTRACTS & UNEXPIRED
LEASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 12

ARTICLE VI MEANS FOR IMPLEMENTATION OF THE PLAN . . . . . Page 12

6.1 Setting a Bar Date . . . . . . . . . . . . . . .                Page 12

6.2 Examine Claims . . . . . . . . . . . . . . . .                Page 12

6.3 File for Professional Fees & Costs . . . . . .                Page 12

6.4 Funding for Plan . . . . . . . . . . . . . . .                Page 12

6.5 Disbursing Agent. . . . . . . . . . . .                Page 13

6.9 Miscellaneous . . . . . . . . . . . . . . . .                Page 13

ARTICLE VII GENERAL PROVISIONS . . . . . . . . . . . . .                Page 13

7.1 Definitions and Rules of Construction . . . . .                Page 13

7.2 Effective Date of Plan . . . . . . . . . . . .                Page 13

7.3 Payment Dates . . . . . . . . . . . . . . . . .                Page 13

7.4 Severability . . . . . . . . . . . . . . . . .                Page 14

7.5 Binding Effect . . . . . . . . . . . . . . . .                Page 14

7.6 Controlling Effect . . . . . . . . . . . . . .                Page 14

7.7 Successors and Assigns . . . . . . . . . . . .                Page 14

7.8 Corporate Governance . . . . . . . . . . . . .                Page 15

7.9 Vesting of Property . . . . . . . . . . . . . .                Page 15

7.10 Retention of Jurisdiction . . . . . . . . . . .                Page 15

ARTICLE VIII DISCHARGE OF DEBTOR . . . . . . . . . . . .        Page 16

    8.1 The Debtor will receive a Discharge . . . . . .        Page 16

ARTICLE IX OTHER PROVISIONS . . . . . . . . . . . . . . .        Page 16

    9.1 What will occur if Plan is not Confirmed . . . .        Page 16

    9.2 The Debtor's Recommendation . . . . . . . . . .        Page 16

PLAN OF REORGANIZATION

ANTHONY A. PIZZARO, (hereinafter "Debtor," or "Proponent"), the debtor,

Debtor-in-possession, and proponent of this Chapter 11 plan of reorganization,

(hereinafter "Plan"), The Debtor proposes the following:

ARTICLE I: Summary

While the Bankruptcy Code, (the "Code") has requirements as to what must be in

a plan, for many, if not most, Claim Holders the most important questions for a plan to

answer is how much the creditor will receive, (often expressed as the percentage dividend

on a claim); when will payment take place; and how certain is it that what is promised

will be delivered. The Plan answers those questions simply and directly as well as stating

the alternative(s) to confirmation in the same manner.

The summary of this Plan is that the Debtor will modify his residential property at

4543 Leaf Lane, Bensalem, PA per the agreement between the Debtor and Selene

Finance which will allow a reduction of repayment for this property to the market value

of $325,000.00, said payment restructured at 6 % per annum interest over thirty (30)

years, with a payment of $27,500.00. The Debtor has also modified two loans on two

investment properties, 2443 Clearfield Street, Philadelphia, PA (with Wells Fargo Bank)

and 6109 Marsden Street, Philadelphia, PA (with Wachovia Bank).  The 3138 Weikel

Street, Philadelphia, PA property is addressed outside the Plan and is unimpaired.  The

Debtor is very close to accomplishing a modification on his investment property, 2904

Poplar Street, Philadelphia, PA.  Debtor anticipates liquidating the property or refinancing to accomplish payoff. The property is also being appraised by the lender for purposes of a potential cramdown is a modification cannot be achieved.  Debtor will either have reached a modification, an agreed upon cramdown amount with lender, or will agree to address all pre and post-petition confirmation arrears if a modification for cramdown cannot be agreed upon by confirmation date.  Debtor has reached an agreement with the lienholder on the property at 1944-46 E. Westmoreland Street.  The Debtor has agreed to accept satisfaction in full for his lien of $75,000.00 to be paid no later than six months post confirmation.

The Debtor believes that the proofs of claims filed by the City of Philadelphia may be inaccurate as they relate to taxes, judgments and other charges.  For various reasons, including the Rooker-Feldman doctrine, the Debtor believes these issues are best addressed outside the bankruptcy forum.  The Debtor shall be provided relief from the automatic stay, as necessary, pursuant to 11 U.S.C. § 362 to pursue judicial or administrative petitions/appeals.  The City of Philadelphia expressly reserves all right to defend any such petitions/appeals through final adjudication.


Starting on ~~December 1, 2017~~ the Effective Date, the Debtor shall make equal monthly payments on the first of every month on 60% ($56,805.56) of the City of Philadelphia's claims with 6% interest through his Chapter 11 Plan.  The monthly ~~Plan~~ payments ~~due the first of each month between December 1, 2017 through May 1, 2018 will~~ shall be $1,502.26 per month.

~~If the Debtor fails to make any payment as agreed or fails to remain current on post-petition taxes, the City of Philadelphia shall notify the Debtor's counsel of the default and if the default is not cured within fifteen (15) days thereafter, the City of Philadelphia may file a Certification of Default and Debtor agrees this case will be dismissed immediately upon filing of the Certification of Default.~~

~~On or before May 1, 2018, the Debtor shall file a motion to modify the Plan, pursuant to 11 U.S.C. § 1127~~  On or before the sixth month following the Effective Date, the City of Philadelphia shall file amended claims to reflect the amount due at that time.  The Debtor agrees ~~to pay the adjusted amount for the City of Philadelphia's~~ amended claims ~~at that time~~ in full with all applicable interest over the remaining term of the Plan.  If the Debtor fails to make any payment as agreed, or fails to remain current on post-petition taxes, the City of Philadelphia shall notify the Debtor's counsel of the default and if the default is not cured within fifteen (15) days thereafter, the City of Philadelphia may file a Certification of Default and Debtor agrees this case will be dismissed immediately upon filing of the Certification of Default and ~~If the Debtor fails to file a motion to modify the Plan on or before May 1, 2018, the Debtor consents to the immediate dismissal of this case, and the case shall be deemed dismissed as of May 1, 2018 at 11:59 p.m., and~~ the Plan and Confirmation Order shall have no binding effect on the City of Philadelphia.

The City of Philadelphia shall retain its liens until paid in full.

All of the aforementioned shall be funded by the collection of rental proceeds, currently 100% occupied, continued employment by Debtor, and by a minimum $2,500.00 contribution by Debtor's live-in fiancée.

This Document should, and the Debtor believes will, answer the questions posed above. At its most elemental level, the function of each of the two components is that the Plan specifies the proposed treatment of each Claim against the Debtor and the mechanics for doing so whereas the Disclosure Statement component provides the necessary information for each creditor [Claim Holder] or other party in interest to make a decision on whether or not to accept the Plan or, if relevant, to raise an objection.

It is required that a plan places each Claim against the Debtor into a class based upon the legal rights accorded to that Claim and the Plan does so. The Code itself classifies certain Claims as well as mandating the treatment of some Claims and also sets the parameters for what must or may be classed together and what cannot be. Only Claims that are substantially similar in their legal rights can be grouped together but can does not always mean must.

In addition to Administrative expense claims, United States trustee fees, and priority tax claims the Plan contains classes of secured claims, priority unsecured claims and general unsecured claims.

All Creditors should refer to Article III for the classification and treatment of their particular Claim(s). Articles IV and V detail the precise treatment of each Claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney,**

**you may wish to consult one.)**

### ARTICLE II: Informational Statement

This Article contains a succinct statement of background information providing context to the Plan, what caused the Debtor to file his case under the Code, and the significant events of this Case.

## WHY THE DEBTOR FILED FOR RELIEF UNDER THE BANKRUPTCY CODE

The Debtor filed his case pro se on June 7, 2016 for relief under Chapter 11 of the Code, (the "Case"). The immediate impetus for the Debtor to request that relief was a mortgage foreclosure proceeding in the Court of Common Pleas, Bucks County, against the Debtor's residential property. The Debtor had fallen behind on the loans secured by the mortgages. A major factor as to why the Debtor fell behind on mortgage payments was a reduction of 50% rental income and a lack of employment income.

Prior to filing, the Debtor began modification negotiations with all lienholders. After the date of filing, the Debtor maintained a near 100% occupancy in all rental properties (currently 100% occupancy) and gained full time employment. He also regained his real estate license and anticipates additional funding being available over the course of the Plan based upon commissions. Finally, he is receiving a minimum $2,500.00 contribution from his long time fiancée.

## IMPORTANT EVENTS OF THE CHAPTER 11 CASE

The debtor filed his case in June 2016 pro se. All required schedules were filed by

the debtor at the time of filing. After case filing on July 6, 2016, Motions for Relief from Stay were filed on the Marsden Street and Clearfield Street rental properties due to Debtor's failure maintain post-petition mortgage payments. The debtor was in communication with the lenders regarding modification on all properties and understood that no plan payments were due post filing. These Motions have been settled by Stipulation.  A Motion for Relief by lien holder U.S. Bank as to 2904 Poplar Street was granted on August 16, 2017.   The Debtor's 341 Meeting of Creditors was held and concluded on July 12, 2016.  On September 13, 2016, an Application to retain Paul Howard Young, Esquire was filed with an Order signed on October 4, 2016. The Court then set a date for completion of Disclosure Statement and Chapter 11 plan for January 6, 2017, which has been continued (with the Court's patience) until October 11, 2017 to help effectuate a confirmable Plan. All documents were filed of record timely. As of this date, there are no outstanding objections remaining and Amended Schedules have been filed.  Amended Disclosures and Plan have been filed October 9, 2017.

## THE DEBTOR'S ASSETS & INCOME

The ability to formulate a plan directly depends upon what the Debtor presently possesses and his prospects for future earnings, rental sale commissions, rental income and his long standing fiancée's monthly contribution. What the Debtor possesses in assets and his income is set forth in the Debtor's Schedules and Statement of Financial Affairs. Therefore the feasibility of the Plan is premised upon, and will be determined by, whether or not the proposed contribution to pay to creditors from the rental income, employment income any sales commission and outside contribution sufficient.

The specifics of how each Claim will be treated, (paid), is set out in Article III.

All payment amounts are based upon an assumption of 41 months remaining in Debtor's

Plan post-confirmation.

## ARTICLE III: Classification & Treatment of Claims & Interests

All Allowed Claims are placed in the following classes. [An Allowed Claim is a

Claim for which a proof of Claim has been filed that is neither subject to a pending

objection nor been designated as disputed; also, for purposes of voting on the Plan, an

Allowed Claim is one that the Court has estimated for voting purposes.] Each numbered

and lettered subclass shall constitute a separate class unless the Plan states that no

subdivision into subclasses is to be so made. A proof of Claim that asserts a Claim that is

properly included in more than one class is included in each such class to the extent it

qualifies within the description of such class.

There are ten filed Claims in this Case. In addition to the filed Claims, there

will also be Claims by the attorney for the debtor-in-possession and the U.S. Trustee that

will be administrative claims. Payment may also be owed to the Court for filing motions,

etc. There are no "Interests" in this Case.

3.1 Class 1 Claims [Priority Claims].

Class 1 shall consist of all Allowed Claims entitled to priority in accordance with

§§ 503(b) and 507(a) of the Code. These Claims are unimpaired under the Plan.

 (a) This Subclass shall consist of all Allowed Claims for the actual and necessary

costs and expenses of administration of the Debtor excepting any sums payable to the

Court, the U.S. Trustee and those Claims which must be made by application to the Court

for allowance of such by professionals. The Claims in this Subclass shall be paid in the

ordinary course of business as such become due according to the usual and customary

terms under which said Claim was incurred;

(b) This Subclass shall consist of sums payable to the Court and the U.S. Trustee

when the Order confirming this Plan becomes final. All such sums shall be paid within

thirty (30) days of the Confirmation Order becoming final; and

(c) This Subclass shall consist of all Allowed Claims for compensation and

reimbursement of expenses pursuant to §§ 328, 330 and 503(b) of the Code, i.e. those

Claims which become Allowed only after an application for allowance of such by

professionals is made to, and determined by, the Court in the amount(s) set by the Court.

The Claim(s) in this Subclass shall be paid within forty-five (45) days after the order

allowing such Claim becomes final unless the holder of such a Claim consents to some

other treatment of said Claim, i.e., payment at a later, date certain in full or payments

over time.

### 3.2A Class 2A Claim [Secured Claim of Castle Peak c/o Selene Finance LP].

Class 2A shall consist of the secured Claim that results from bifurcating the Allowed

Under-Secured Claim filed at #10 on the Claims Register by Castle Peak 2012-1 Loan

Trust Mortgage c/o Selene Finance LP, N.A., into secured and unsecured components.

Claim #10 on the Claims Register arises from a loan to the Debtor secured by a first

mortgage against the Debtor's residential property. Claim #10 was filed in

the amount of $797,594.74. As the value of the collateral, the Debtor's residence at 4543

Leaf Lane is $325,000.00. The Holder of this Claim, Selene Finance, consent to the

repayment of $325000.00 at 6 percent per annum over thirty years with Debtor to pay

$27,500.00 within 30 days after confirmation of his Chapter 11 plan. Said funding is to

be provided by a gift paid by live-in fianceés mother.  Any undersecured portion of this

claim will be reduced to $0 upon confirmation.  Claim is impaired.

### 3.2B Class 2B Claims [Secured Claim of SPS, Select Portfolio Services].

Class 2B shall consist of the secured Claim that results from bifurcating the Allowed

Under-Secured Claim filed at #9 on the Claims Register by U.S. Bank into secured and

unsecured components. #9 on the Claims Register arises from a loan to the Debtor

secured by a first mortgage against the Debtor's Investment property, 6109 Marsden

Street, Philadelphia, PA. Claim #9 was filed in the amount of $155,723.68. By stipulation

the loan has been modified to a secured amount of $84,000.00 with 6 Percent per annum

interest to be paid over 360 months at an amount of $623.03 which payment will begin

August 1, 2017 and complete November 1, 2046. There will be no unsecured

claim amount due.  This Claim is impaired. The Stipulation filed and docketed as entry

157 is incorporated herein as though set forth in full.

### 3.2C Class 2C Claim [Secured Claim of Wells Fargo Bank c/o SPS]

Class 2C shall consist of the secured claim that result from bifurcating the allowed

undersecured claim held by Wells Fargo c/o SPS arising from a loan to the Debtor

secured by a first mortgage against the Debtor's investment property, 2443 E. Clearfield

Street, Philadelphia, PA.  No POC was filed, but the approximate loan amount at the time

of filing was $114,657.00.  By stipulation, the loan has been modified to a secured

amount of $96,000.00 with a 6% per annum interest rate to be paid over 360 months in an

amount of $723.10, which payment will begin September 1, 2017 and complete August

1, 2034.  There will be no unsecured claim due upon confirmation.  This claim is

impaired.  The Stipulation filed and docketed as entry 160 is incorporated herein as

though set forth in full.


3.2D Class 2D Claims [Secured Claim of US Bank C/O Rushmore].

Class 2C shall consist of the secured Claim that results from the Allowed

Secured Claim filed at #8 on the Claims Register by US Bank C/O Rushmore. #8 on the

Claims Register arises from a loan to the Debtor secured by a first mortgage against the

Debtor's Investment property, located at 2904 Poplar, Philadelphia, PA. Claim #8 was

filed in the amount of $448,918.02. The Debtor is attempting a loan modification with

U.S. Bank C/O Rushmore and all documents have been supplied to said creditor and with

with Underwriting for review.  If the loan is not modified or unless a cramdown amount

is not agreed upon, the Debtor shall propose a cure payment of the pre and post-petition

mortgage arrearages of approximately $30,000.00 over the remaining months of the Plan.

Debtor would then resume normal monthly payments.  This Claim is impaired.


3.2E Class 2E Claim [Secured Claim held by SPS, Select Portfolio Services].

Class 2E shall consist of the secured Claim that results from the Allowed

Secured Claim by SPS which arose from a loan to the Debtor secured by a first mortgage

against the Debtor's Investment property, located at 3138 Wiekel Street, Philadelphia, PA

19020.  This loan has no pre or post-petition mortgage arrearages and the Debtor

shall continue to make regular mortgage payment to said creditor.  There has been no

POC filed by creditor SPS. There are no pre-petition arrearages. This claim is not

impaired.


3.2F Class 2F Claim [Secured Claim held by G&D Properties].

Class 2F #7 Secured claim on the Claims Register by G&D Properties. #7 on the Claims

Register arises from a loan to the Debtor secured by a first mortgage against the

Debtor's Investment property, located at 1944-46 E Westmoreland Street, Philadelphia,

PA (the "Loan"). Claim #7 was filed in the amount of $272,363.97. The Debtor agrees to

deliver to G&D the sum of $75,000 within six (6) months from the date on which the

Bankruptcy Court confirms the Chapter 11 Plan (the "G&D Payment").  G&D agrees to

accept the sum of $75,000 in full and final satisfaction of the mortgage recorded against

real property at 1944-46 Westmoreland Street, Philadelphia, Pennsylvania.  If Debtor

fails to deliver timely the G&D Payment, or the case converts to a bankruptcy under any

chapter other than Chapter 11, counsel for G&D may file with the Bankruptcy Court a

Certification of Default setting forth Debtor's default and a proposed Order granting

G&D immediate relief from the automatic stay provisions of Section 362 of the

Bankruptcy Code (11 U.S.C. §362) and permitting G&D to proceed with exercising its

rights and remedies under State or Federal Law.  Debtor and G&D agree that G&D

Payment represents a compromise of a disputed claim.  In the event the bankruptcy case

dismisses prior to delivery of the G&D Payment, Debtor and G&D agree that this

compromise is null and void.  The Debtor and Mortgage creditor are in agreement that

payment shall occur within six months post confirmation in the amount of $75,000.00.

G&D has agreed to accept the payment as full satisfaction and any undersecured portion

will be reduced to $0 upon confirmation.  This claim is impaired

3.2G Class 2G Claim [Secured Claim held by the City of Philadelphia].

Class 2G shall consist of the tax debt, judgments, refuse, collection fees owed to the City

of Philadelphia, plus statutorily allowed interest of 6% on judgments and 9% on real

estate taxes.  This Claim, docketed as Claim #3 in the amount of $44,802.80 (the "Tax

Claim"), is partially disputed.  Treatment of the Tax Claim is set forth below at 3.2H.

3.2H Class 2H Claim [Secured Claim held by the City of Philadelphia].

Class 2H shall consist of the water/sewer claim held by the City of Philadelphia,

docketed as Claim #2 in the amount of $49,835.13 (the "Water/Sewer Claim").

The Debtor believes that the Tax Claim and the Water/Sewer Claim may be inaccurate as

they relate to taxes, judgments, liens and other charges.  For various reasons, including

the Rooker-Feldman doctrine, the Debtor believes these issues are best addressed outside

the bankruptcy forum.  The Debtor seeks relief from the automatic stay, as necessary,

pursuant to 11 U.S.C. § 362 to pursue judicial or administrative petitions/appeals.  The

City of Philadelphia expressly reserves all rights to defend the petitions/appeals until final

adjudication.

Starting on ~~December 1, 2017~~ the Effective Date, the Debtor shall make equal monthly payments ~~on the first of every month~~ on 60% of the City of Philadelphia's claims with 6% interest. The monthly ~~Plan~~ Interim payments ~~due the first of each month between December 1, 2017 through May 1, 2018 will~~ shall be $1,502.26 per month.

~~If the Debtor fails to make any payment as agreed or fails to remain current on post-petition taxes, the City of Philadelphia shall notify the Debtor's counsel of the default and if the default is not cured within fifteen (15) days thereafter, the City of Philadelphia may file a Certification of Default and Debtor agrees this case will be dismissed immediately upon filing of the Certification of Default.~~

On or before ~~May 1, 2018, the Debtor shall file a motion to modify the Plan, pursuant to 11 U.S.C. § 1127~~ the sixth month following the Effective Date, ~~to pay~~ the City of Philadelphia~~'s claims~~ shall file an amended Water/Sewer (the "Amended Water/Sewer Claim") and amended Tax Claim (the "Amended Tax Claim") to reflect the amount due at that time. The Debtor agrees to pay the Amended Water/Sewer and Amended Tax Claim in full with all applicable interest in equal monthly installments over the remaining term of the Plan ending June 7, 2021 (the "Plan Payments"). ~~If the Debtor fails to file a motion to modify the Plan on or before May 1, 2018, the Debtor consents to the immediate dismissal of this case, and the Case shall be deemed dismissed as of May 1, 2018 at 11:59 p.m..~~

If the Debtor fails to make any Interim Payment or Plan Payment as agreed, or fails to remain current on post-petition taxes, the City of Philadelphia shall notify the Debtor's counsel of the default and if the default is not cured within fifteen (15) days thereafter, the City of Philadelphia may file a Certification of Default and Debtor agrees this case will be dismissed immediately upon filing of the Certification of Default and the Plan and Confirmation Order shall have no binding effect on the City of Philadelphia.

The City of Philadelphia shall retain its liens until paid in full.

3.2I Class 2I Claim [Secured Claim held by the Bucks County Water and Sewer Authority].

Class 2I shall consist of the tax debt due to the Bucks County Water and Sewer Authority arising from the Water and Sewer tax lien. This Claim, docketed as Claim #5 in the amount of $1224.32 shall be paid in full through Debtor's Plan beginning 30 days after confirmation with estimated payments at $29.86.  This claim is not impaired.

3.3      Class 3 Claim (s) [Unsecured claims entitled to Priority]

1. The Internal Revenue Service has a priority tax claim, Proof of claim #1 on the Claims register in the amount of $929.58 shall be paid over the remaining months of the Plan on monthly basis through Debtor's Plan 30 days after confirmation estimated at $22.67.  This claim is not impaired.

2. The Pennsylvania Department of Revenue has a priority tax claim, Proof of claim #4 in the amount of $1444.89 shall be paid in full in the Plan on monthly basis through Debtor's Plan beginning 30 days after confirmation estimated at $35.24.  This claim is not impaired.

3. The City of Philadelphia's Tax Claim includes a priority claim for Use and Occupancy Tax ("U&O Tax") in the amount of $7,682.31.  Treatment of the claim for U&O Tax is set forth *supra* at 3.2H.

### 3.4 Class 4 Claims [Unsecured Claims not entitled to Priority]

Class 4 shall consist of all Allowed, Unsecured Claims without Priority that are not specifically included in some other Class. This Class contains the Claim of: #1 on Register – Department of Treasury $220.86; #6 on Register - filed by PECO Energy Company. $14,178.13.  #11 on Register – Pentagon Federal Credit Union $5,167.00; #12 on Register – Pentagon Federal Credit Union $16,853.32.  Additional unsecured creditors who did not file POC's are Barclay Bank $1,588.00, Capital One $2,081.00 and Capital One $1,911.00.  Debtor proposes paying a total of $4,199.00 pro-rata to these claims, representing a 10% dividend, through Debtor's Plan beginning 30 days after confirmation estimated at $102.41.  This class is impaired.

### Class 5 Claim(s) [Unsecured Claims not entitled to Priority not included within Class 4]

NONE

## ARTICLE IV ALLOWANCE & DISALLOWANCE OF CLAIMS

### 4.1 Disputed Claim

A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (I) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no

proof of claim has been filed, and the Debtor has scheduled such claim as disputed,

contingent, or unliquidated.


4.2 Delay of Distribution on a Disputed Claim

No distribution will be made on account of a disputed claim, except as provided

herein, unless such claim is allowed [by a final non-appealable order].


4.3 Settlement of Disputed Claims

The Debtor will have the power and authority to settle and compromise a disputed claim

with court approval and in compliance with Rule 9019 of the Federal Rules of

Bankruptcy Procedure.


4.4 Claims that are Disputed:

 NONE


## ARTICLE V PROVISIONS FOR EXECUTORY CONTRACTS & UNEXPIRED LEASES

The Plan provides that all Executory Contracts and Unexpired Leases shall be

deemed assumed. Rental leases for the tenants at 2904 Poplar Street, 2443 Clearfield

Street, 6109 Marsden Street, 1944-46 E. Westmoreland Street, and 3138 Weikel Street

are assumed by the Debtor.


## ARTICLE VI MEANS FOR IMPLEMENTATION OF THE PLAN

6.1 Setting a Bar Date:

The Court has set the deadline for bar date of April 24, 2017. Given the age of the

Case it is believed that all creditors of the Debtor have already appeared.

6.2 Examine Claims

All claims that the Debtor believed needed to be examined have been examined.

6.3 File for Professional Fees & Costs

The Debtor shall, as soon as is practicable, prepare and file its applications for

fees and costs to be paid to its one, retained professional, his attorney.

6.4 Funding for Plan

The Chapter 11 plan shall be funded by the collection of Rental Income, the

continued full-time employment and Realtors commissions from future sale of real estate

and a contribution from Debtor's live-in fiancé.  All funds received monthly are sufficient

to propose a feasible plan by paying the City of Philadelphia for all secured and

unsecured claims (a final amount to be determined in six months), all secured creditors as

proposed, priority claims in full and a 10% pro rata disbursement to all unsecured

creditors, in addition to all required United States Trustee quarterly fees and Attorney

fees and expenses, as well as all other administrative fees.

6.5 Disbursing Agent

 The Debtor, Anthony Pizzaro will act as his own disbursing agent.

6.6 Miscellaneous

The Debtor shall take all other steps, as the need may arise, to move this case to

its conclusion.

## ARTICLE VII GENERAL PROVISIONS

7.1 Definitions and Rules of Construction

 The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

7.2 Effective Date of Plan

 The Effective Date of this Plan is the eleventh business day following the later of the date of the entry of the order of confirmation unless a stay of the confirmation order is in effect on that date. In the event a stay of the confirmation order is entered, the effective Date shall be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.3 Payment Dates

 Whenever any payment or distribution to be made under this Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day, [what is a Business Day shall be determined under the laws of the Commonwealth of Pennsylvania].

7.4 Severability

If any provision in this Plan is determined to be unenforceable, that determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

## 7.5 Binding Effect

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of that entity. 7.6 Captions The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## 7.6 Controlling Effect

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the Commonwealth of Pennsylvania govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in this Plan.

## 7.7 Successors and Assigns

The rights, duties, and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

## 7.8 Corporate Governance

§ 1123(a)(6) of the Code is inapplicable to the Debtor because the Debtor is an

individual.

7.9 Vesting of Property

Except as provided for in this Plan, or in the Confirmation Order, on the Effective

Date all assets of the Debtor's Estate that have been fully administered shall be vested

with the Reorganized Debtor.

7.10 Retention of Jurisdiction

Notwithstanding confirmation of this Plan, this Court shall retain jurisdiction for

the following purposes:

(a) Determination of the allowability of Claims upon objection to such Claims by

the Debtor, the Proponent, any successor to the Debtor, or by any other party in interest,

including, without limitation, allowance or award of compensation to any Class 1

Claimant;

(b) Determination of requests for payment of Claims entitled to priority under §

507(a)(1) of the Code, including compensation of parties entitled thereto;

(c) Fully determining any Adversary Matter that may be pending before the Order

is entered Confirming the instant Plan;

(d) Resolution of controversies and disputes regarding the interpretation or

enforcement of the terms of this Plan, any of the instruments issued under, or relating to,

this Plan or any other documentation evidencing the terms of this Plan;

(e) Implementation of the provisions of this Plan and entry of orders in aid of confirmation of this Plan, including, without limitation, appropriate orders to enforce this Plan and its provisions and protect persons, including, without limitation, the Debtor and its successor(s) from creditor action;

(f) Modification of this Plan pursuant to § 1127 of the Code;

(g) Correction of any defect, curing of any omission, or reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan;

(h) Determination of such other matters as may be provided for in the Confirmation Order or as may, from time to time, be authorized under the provisions of the Code or any other applicable law; and

(i)      Entry of a final decree closing the Debtor's case.

## ARTICLE VIII DISCHARGE OF DEBTOR

8.1 The Debtor may receive a Discharge

§ 1141(d) of the Code sets the parameters that determine whether or not the Debtor can receive a Discharge. This Debtor is eligible to receive a discharge upon completion of Plan payments §1141(d) or unless an early discharge is sought and received pursuant to §1141(d)(5).

## ARTICLE IX OTHER PROVISIONS

9.1 What will occur if Plan is not Confirmed

In the event the Court concludes that the Debtor cannot propose a plan that can

be confirmed, there are theoretically two (2) alternatives: conversion to a case under Chapter 7 of the Code or dismissal. Conversion to a case under Chapter 7 of the Code is not practical as there are no funds available for the estate as assets are far exceeded by Debtor's liability. Secured creditor(s) are undersecured on the Debtor's realty and conversion results in no distribution whatsoever to the unsecureds.

<u>9.2 The Debtor's Recommendation</u>

The Debtor recommends that the Plan be accepted because it is in the best interests of all creditors, as is shown in the preceding, and is the only path that will lead to any distribution on unsecured claims.

Dated: November 6, 2017                    Respectfully submitted,

                                           /s/ Anthony Pizzaro by and through
                                           his attorney Paul Howard Young